IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

PRIME VENTURE CORPORATION,

**Plaintiff,**

v.

**CIVIL NO.:** 18-1473 (RAM)

FENNIX GLOBAL HOLDINGS, INC.,

**Defendant.**

## OPINION AND ORDER

RAÚL M. ARIAS-MARXUACH, United States District Judge

Pending before the Court is Plaintiff Prime Venture Corporation's *Complaint for Declaratory Judgment* (Docket No. 33). For the reasons set forth below, the Court **DENIES** the requested declaratory judgment and **DISMISSES** the Complaint **with prejudice**.

### I. BACKGROUND

This case arises from the arbitration agreement in a "Memorandum of Understanding" ("MOU") between Prime Venture Corporation ("Prime" or "Plaintiff") and Fennix Global Holdings, Inc. ("Fennix" or "Defendant"). (Docket No. 34-1). Under the MOU, Prime would invest $250,000 in Fennix and the latter would develop software for use by law enforcement personnel. Id. at 1. Plaintiff invoked the Court's diversity of citizenship subject matter jurisdiction in the *Second Amended Complaint* ("Complaint"). (Docket No. 33 ¶ 2). Prime is a corporation organized and existing

under the laws of the Commonwealth of Puerto Rico with a principal place of business in San Juan, Puerto Rico. Id. ¶ 6. Fennix on the other hand, is a corporation organized and existing under the laws of Panama with a principal place of business in Panama. Id. ¶ 7.

According to the *Complaint*, there is no controversy between the parties that a current dispute between them is subject to arbitration. Id. ¶ 18. Instead, the parties disagree on whether arbitration should take place before the Chamber of Commerce, Industry, and Agriculture of Panama or before JAMS, an arbitration administrator with offices in Boca Raton, Florida. Id. ¶¶ 18-20.[1] Prime avers that the MOU's arbitration agreement allows arbitration to be held before an entity equivalent to the Chamber of Commerce, Industry or Agriculture of Panama. Id. at ¶ 19. Prime alleges that JAMS is such an entity. Id. ¶ 22.

Accordingly, Prime petitioned for a declaratory judgment providing that:

> JAMS arbitration in Boca Raton, Florida is the Puerto Rican equivalent of arbitration before the Chamber of Commerce, Industry, & Agriculture of Panama, and, for that reason, that JAMS has jurisdiction to resolve all disputes arising under the April 16, 2016 [sic.] Memorandum of Understanding between

---

[1] Arbitration agreements tend to specify an arbitration administrator. These administrators, "which may be for-profit or non-profit organizations, facilitate the selection of an arbitrator to decide the dispute, provide for basic rules of procedure and operations support, and generally administer the arbitration." Arbitration Agreements, Federal Register, https://www.federalregister.gov/documents/2016/05/24/2016-10961/arbitration-agreements (last visited on June 12, 2020).

>           Prime Venture Corporation and Fennix Global
>           Holdings, Inc.

Id. at 6. Defendant Fennix is in default. (Docket No. 27). Prime amended the Complaint after entry of default upon Fennix. (Docket Nos. 28 and 33).

On March 26, 2020, the Court ordered Prime to show cause why the Court should not declare that JAMS is not an alternate arbitral forum in this case given that that: (1) the arbitration agreement lists the Arbitration Center of the Chamber of Commerce, Industry and Agriculture of Panama as a first option for an arbitral forum; (b) the *Complaint* is devoid of allegations that this forum is not available. (Docket No. 32).

Prime filed its response on April 21, 2020. (Docket No. 34). Simply stated, Prime argued: (a) the performance of the parties' contractual obligations was to take place in Puerto Rico, and (b) the arbitration agreement does not require that one arbitral forum be unavailable before choosing another. Id. ¶¶ 2-3. Thus, Prime requested in the *Complaint* that the Court "enter a judgment declaring that JAMS arbitration in Boca Raton, Florida is the Puerto Rican equivalent of arbitration before the Chamber of Commerce, Industry, & Agriculture of Panama," and declare "that JAMS has jurisdiction to resolve all disputes arising under the April 16, 2016 [sic.] Memorandum of Understanding between Prime

Venture Corporation and Fennix Global Holdings, Inc." (Docket No. 33 at 6.)[2]

## II. APPLICABLE LAW

**A. Standard governing dismissal under Fed. R. Civ. P. 12(b)(6):**

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." Under Rule 12(b)(6), the plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations marks, citations and footnote omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. A complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation omitted).

To determine whether a complaint has stated a plausible, non-speculative claim for relief, "courts must consider the complaint in its entirety, as well as other sources" such as "documents

---

[2] The Court notes that while Plaintiff states that the April 2016 MOU is dated April 16, 2016, the effective date is April 20, 2016. (Docket No. 34-1 at 1).

incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007). Further, this requires treating non-conclusory factual allegations as true. *See* Nieto-Vicenty v. Valledor, 984 F. Supp. 2d 17, 20 (D.P.R. 2013). However, even if a party has not moved to dismiss a complaint for failure to state a claim, "**a district court may 'note the inadequacy of the complaint and, on its own initiative, dismiss the complaint**' under Rule 12(b)(6)." Fernandez v. BRG, LLC, 2017 WL 7362729, at *4 (D.P.R. 2017) (quotation omitted) (emphasis added). Lastly, "[s]ua sponte dismissals should be used sparingly, but are appropriate if it is 'crystal clear that the plaintiff cannot prevail and that amending the complaint would be futile.'" Jimenez-Tapia v. Santander Bank PR, 257 F. Supp. 3d 193, 198 (D.P.R. 2017) (quotation omitted).

**B. Declaratory judgments under Fed. R. Civ. P. 59**

The Declaratory Judgment Act "is an enabling act which confers discretion on the Courts rather than an absolute right upon the litigant." DeNovelis v. Shalala, 124 F.3d 298, 313 (1st Cir. 1997) (quotation omitted). Hence, it is considered "procedural in nature." Universal Ins. Co. v. Office of Ins. Com'r, 2012 WL 4894668, at *4 (D.P.R. 2012), aff'd, 755 F.3d 34 (1st Cir. 2014). In the context of declaratory judgment, "the normal principle that federal courts should adjudicate claims within their jurisdiction

yields to considerations of practicality and wise judicial administration." Wilton v. Seven Falls Co., 515 U.S. 277, 287 (1995). Other factors that the Supreme Court considers when deciding whether to entertain a suit under the Declaratory Judgment Act include "the scope of the pending state court proceeding and the nature of defenses open there." Estate of Curet Alonso v. Salazar Rivera, 2011 WL 13233493, at *2 (D.P.R. 2011), report and recommendation adopted sub nom. Estate of Don Catalino "Tite" Curet Alonso v. Salazar Rivera, 2011 WL 13233449 (D.P.R. 2011) (quoting Wilton, 515 U.S. at 282). This entails that the Court consider "whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding, whether necessary parties have been joined, [and] whether such parties are amenable to process in that proceeding." Id.

According to the First Circuit, "[t]he divide between a valid declaratory judgment and an invalid advisory opinion can be narrow." Massachusetts Delivery Assn. v. Coakley, 769 F.3d 11, 16 (1st 2014) (citation omitted). Essentially, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." Id. (quotation omitted).

Factors considered by other Courts of Appeals to decide whether to hear an action under the Declaratory Judgment Act include whether: (1) a judgment would settle the controversy; (2) the declaratory judgment would serve a useful purpose in clarifying the legal relations at issue; (3) the declaratory remedy is being used only as a "procedural fencing" or "to provide an arena for a race for res judicata"; (4) the use of a declaratory action would increase the friction between federal and state courts and encroach on state jurisdiction; and (5) there is an alternative remedy that is better or more effective. *See* Bituminous Cas. Corp. v. J & L Lumber Co., Inc.*,* 373 F.3d 807, 813 (6th Cir.2004) (citation omitted); Aetna Life Ins. Co. v. Methodist Hosps. of Dallas, 640 F. App'x 314, 318 (5th Cir. 2016) (using a seven-factor test).

**C. International Arbitration under the Federal Arbitration Act**

The Federal Arbitration Act, 9 U.S.C. §§ 1-307 ("FAA"), "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). Under the FAA, "arbitration is a matter of contract, and courts must enforce arbitration contracts according to their terms." Henry Schein, Inc. v. Archer and White Sales, Inc., 139 S. Ct. 524, 529 (2019) (holding that when the parties delegate a question of arbitrability to the arbitral forum, the Court may not override the contract and

instead must enforce that delegation even if it views the dispute to be "wholly groundless").

Chapter 1 of the FAA (9 U.S.C. §§ 1-16) contains its general provisions. The FAA defines the term "commerce" as "commerce among the several States or with foreign nations, or in any Territory of the United States or in the District of Columbia, or between any such Territory and another, **or between any such Territory and any** State or **foreign nation**, or between the District of Columbia and any State or Territory or foreign nation." 9 U.S.C. § 1 (emphasis added). Moreover, Section 2 of the Act provides that:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

Therefore, section 2 of the FAA "create[s] a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Mem. Hosp., 460 U.S. at 24-25. It also "permits courts to apply state-law doctrines related to the enforcement of arbitration agreements." GE Energy Power Conversion France SAS, Corp. v.

Outokumpu Stainless Steel USA, LLC, 2020 WL 2814297 at * 3 (2020) (holding that the Convention on the Recognition and Enforcement of Foreign Arbitral Awards "does not conflict with the enforcement of arbitration agreements by nonsignatories under domestic-law equitable estoppel doctrines"). More importantly, these state contract law principles "control the determination of whether a valid agreement to arbitrate exists." Rivera-Concepción v. AT&T Mobility Puerto Rico, Inc., 913 F.3d 200, 207 (1st Cir. 2019) (quotation omitted). The FAA "places arbitration agreements on the same footing as other contracts." Id. (quotation omitted).

Chapter 2 of the FAA (9 U.S.C. §§ 201-208) implements the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (known as the "New York Convention"). Chapter 3 of the FAA (9 U.S.C. §§ 301-307), in turn, implements the Interamerican Convention on International Commercial Arbitration (known as the "Panama Convention" or "Inter-American Convention"). The two conventions, the New York Convention and the Panama Convention, are "substantively similar". Huntington Ingalls Incorporated v. Ministry of Defense of Bolivarian Republic of Venezuela, 2019 WL 2476629 at * 4 (D.D.C. 2019). The Inter-American Convention applies where the "majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the

Organization of American States". 9 U.S.C. § 305.[3] The New Yok Convention applies in all other cases. Id. Lastly, the Inter-American Convention reinforces in its Article 1 the validity of "[a]n agreement in which the parties undertake to submit to arbitral decision any differences that may arise or have arisen between them with respect to a commercial transaction."[4]

Contrary to the FAA's Chapter 1, which does not contain an independent grant of subject matter jurisdiction for domestic arbitration, Chapters 2 and 3 confer federal question subject matter jurisdiction upon District Courts regardless of the amount in controversy. See 9 U.S.C. §§ 203 and 302. Chapters 2 and 3 also provide that a Court "may direct that arbitration be held in accordance with the agreement any place therein provided for, whether that place is within or without the United States." See 9 U.S.C. §§ 206 and 303(a). Lastly, the provisions of Chapter 1 are applicable to actions and proceedings under Chapters 2 and 3 unless

---

[3] Both Panama and the United States signed and ratified the New York and the Panama Conventions. See Contracting States, NEW YORK ARBITRATION CONVENTION, http://www.newyorkconvention.org/countries (last visited on June 12, 2020); Foreign Trade Information System, Commercial Arbitration and Other Alternative Dispute Resolution Methods, ORGANIZATION OF AMERICAN STATES, http://www.sice.oas.org/ DISPUTE/COMARB/Intl_Conv/caicpae.asp (last visited on June 12, 2020). They are also members of the Organization of American States. See Member States, ORGANIZATION OF AMERICAN STATES, http://oas.org/en/member_states/default.asp (last visited on June 12, 2020).

[4] Department of International Law, Inter-American Convention on International Commercial Arbitration (B-35), ORGANIZATION OF AMERICAN STATES, http://www.oas.org/en/sla/dil/inter_american_treaties_B-35_international_ commercial_arbitration.asp (last visited on June 12, 2020).

they conflict with those Chapters' provisions or those of the New York and Inter-American conventions. *See* 9 U.S.C. §§ 208 and 307.

For a Court to the determine whether a dispute falls under the New York Convention, First Circuit case law requires consideration of the following questions: (1) is there a written agreement to arbitrate the dispute? (2) does it provide for arbitration in the territory of a Convention signatory? (3) does it arise out of a commercial relationship? (4) is a party not an American citizen, or does the commercial relationship have a reasonable relation with one or more foreign states? *See* <u>DiMercurio v. Sphere Drake Ins., PLC</u>, 202 F.3d 71, 74 (1st Cir. 2000). Pursuant to 9 U.S.C. § 305, and to determine whether the Inter-American Convention applies in lieu of the New York Convention, the Court will also inquire whether the majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to the Inter-American Convention and are member States of the Organization of American States.

### III. FINDINGS OF FACT

Pursuant to the standard governing dismissals under Fed. R. Civ. P. 12(b)(6), premised on the *Complaint's* well-plead allegations, the April 20, 2016 MOU, and taking of judicial notice pursuant to Fed. R. Evid. 201, the Court makes the following findings of fact:

1. Prime is a corporation organized under the laws of the Commonwealth of Puerto Rico with a principal place of business in San Juan, Puerto Rico. (Docket No. 33 ¶ 6).

2. Fennix is corporation under the laws of Panama with principal place of business in Panama City, Panama. Id. at ¶ 7.

3. On April 20, 2016, Prime and Fennix entered into a MOU whereby Prime acquired ten percent (10%) of Fennix's capital stock and the latter undertook the obligation to develop monitoring software for persons under law enforcement supervision. Id. ¶ 13.

4. Fennix also undertook the obligation to provide Prime with monthly accountings, and reports regarding development of the software and administer the software development. Id. ¶ 14.

5. Paragraph 4.4 of the MOU provides for arbitration before the Chamber of Commerce, Industry & Agriculture of Panama "or its equivalent" in Puerto Rico: "This Contract shall be governed by the laws of the Republic of Panama or their equivalent in the Commonwealth of Puerto Rico. Any controversy between the parties with regard to this Agreement will be resolved through arbitration according to the Arbitration Center of the Chamber of Commerce, Industry and Agriculture of Panama

or its equivalent in the Commonwealth of Puerto Rico." Id. ¶ 15.

6. The Puerto Rico Chamber of Commerce is not administering arbitrations since the passage of Hurricane María. Id. ¶ 3.

7. A dispute over whether Fennix owes $250,000 plus attorney's fees and interest exists. Id. ¶ 2.

8. According to Prime, Fennix "concedes arbitration is appropriate, but argues that it can only be arbitrated in Panama at the Chamber of Commerce, Industry, & Agriculture of Panama." Id. ¶ 18.

9. Prime requests that the Court determine that "JAMS arbitration in Boca Raton, Florida is the Puerto Rican equivalent of arbitration before the Chamber of Commerce, Industry, & Agriculture of Panama, and, for that reason, that JAMS has jurisdiction to resolve all disputes arising under the April 16, 2020 [Sic.] Memorandum of Understanding between Prime Venture Corporation and Fennix Global Holdings, Inc." Id. at 6.

10. The "Centro de Conciliación y Arbitraje de Panamá" ("CeCap") is an institution sponsored by the Chamber of Commerce, Industries and Agriculture of Panama and other business associations and founded in 1994 to promote the

use of alternate dispute resolution methods such as arbitration, mediation and conciliation.[5]

11. CeCap has a separate legal personality from the Chamber of Commerce, Industry and Agriculture of Panama. It provides arbitration administration services and has its own roster of arbitrators, mediators and conciliators.[6]

12. JAMS bills itself as the "world's largest alternative dispute resolution (ADR) provider."[7]

13. JAMS provides dispute resolution services worldwide and has twenty-three (23) arbitrators competent to resolve disputes in the Spanish language. (Docket No. 33 ¶¶ 17, 20).

## IV. DISCUSSION

Consideration of the questions required by First Circuit in DiMercurio v. Sphere Drake Ins., PLC and 9 U.S.C. § 305 leads to the conclusion that the Inter-American Convention applies to this case. *See* DiMercurio, 202 F.3d at 74.

---

[5] *See* Centro de Conciliación y Arbitraje de Panamá, cecap.com.pa (last visited on June 12, 2020). Pursuant to Fed. R. Evid. 201, the Court takes judicial notice of the contents of Cecap's website. *See* Canuto v. Mattis, 273 F.3d 127, 133 n.6 (D.D.C. 2017) ("The Court may take judicial notice of the information provided in the websites it has consulted").

[6] *See* Centro de Conciliación y Arbitraje, Cámara de Comercio, Industrias y Agricultura de Panamá, https://www.panacamara.com/cecap/ (last visited on June 12, 2020). The Court also take judicial notice of this website.

[7] *See* About us, JAMS Mediation, Arbitration and ADR Services, https://www.jamsadr.com/about/ (last visited on June 12, 2020). The Court also takes judicial notice of this website.

First, there is a written agreement to arbitrate any dispute. (Docket No. 34-1 ¶ 4.4). Second, it provides for arbitration in a territory which is a signatory of the Convention, as both Panama and the United States are signatories. Third and Fourth, the arbitration arises out of a commercial relationship, namely out of the April 20, 2016 MOU between both parties, one of which, Fennix, is not an American citizen. (Docket No. 34-1). *See also*, Alcoa Inc. v. Benso Corp., 2008 WL 11495186, at *4 (D.P.R. 2008) (applying the same factors and holding that discussing the application of the Panama Convention was unnecessary since "[the] codification of the Panama Convention codifies by reference the relevant portions of the New York Convention.") Lastly, the two parties to the dispute are citizens of Panama and the United States, both of which ratified the Inter-American Convention and are member States of the Organization of American States. *See* Footnote 3, *infra*; 9 U.S.C. § 305.

Prime did not invoke the Court's subject matter jurisdiction or request an order compelling arbitration under the FAA's provisions for the enforcement of the Inter-American Convention or the New York Convention. (Docket No. 33). Instead, it only requested a declaratory judgment stating that JAMS arbitration "in Boca Raton, Florida is the Puerto Rican equivalent of arbitration before the Chamber of Commerce, Industry, & Agriculture of Panama." (Docket No. 33 at 6). There are two questions embedded in this

request: (1) whether arbitration before JAMS is "equivalent" to arbitration before CeCap, and (2) whether arbitration in Boca Raton, Florida is "equivalent" to arbitration in Puerto Rico.

Equivalent means "corresponding or virtually identical especially in effect or function."[8] Other than highlighting the fact that JAMS's roster of neutrals or arbitrators includes twenty-three (23) Spanish speakers, neither the *Complaint* nor Prime's other submissions to the Court shed light on the first question. (Docket Nos. 32; 33 at ¶ 17). In other words, no effort was made to explain how arbitration administration by JAMS is functionally equivalent to arbitration administration by CeCap. It might very well be. But the Court need not dwell on the issue because the answer to the second question disposes of this matter. Both geography and basic principles of arbitration lead to the conclusion that arbitration in Boca Raton, Florida is not "equivalent" to arbitration in Puerto Rico.

Prime contends that "it should be no great distinction to Fennix Global Holdings that the arbitration proceeding itself would occur in Boca Raton, Florida and not Puerto Rico" because Fennix agreed to have arbitration outside Panama. (Docket No. 33 ¶ 24). However, the law does not allow this leap as the MOU provides for arbitration to be held in Panama **or** Puerto Rico **but not** in

---

[8] *See Equivalent,* MERRIAM WEBSTER https://www.merriam-webster.com/dictionary/equivalent (last visited on June 11, 2020).

Florida. *See* Banks Channel, LLC v. Brands, 796 F.Supp.2d 294 (D.P.R. 2011) (holding that parties could not arbitrate claims in Puerto Rico after they had agreed upon Barbados as a place of arbitration and dismissing the complaint under the FAA); McCain Foods Ltd. v. Puerto Rico Supplies, Inc., 766 F.Supp. 58, 59-60 (D.P.R. 1991) (compelling arbitration in Canada and dismissing the complaint under the FAA and the New York Convention). Moreover, Prime has not shown that it was coerced into selecting Panama or Puerto Rico as potential places of arbitration, hence arbitration in either place is proper. *See* Banks Channel, LLC, 796 F. Supp.2d at 297 ("Plaintiff does not allege that Defendants defrauded or coerced it into agreeing to the arbitration clause. Neither does Plaintiff allege that such clause should be revoked[.] […] Accordingly, Plaintiff's alternate argument [that Puerto Rico should be the place of arbitration] fails.")

Similarly, Section 303(a) of the FAA's provisions for the enforcement of the Inter-American Convention provide that a Court may order "that arbitration be held in accordance with the agreement **at any place therein provided for**, whether that place is within or without the United States." 9 U.S.C. § 303(a) (emphasis added). The First Circuit has repeatedly stated that "**[c]ourts may not rewrite the parties' agreements and compel arbitration of their dispute in a forum which is not one of those enumerated in an arbitration agreement's forum selection clause.**" *See* In Re

Mercurio, 402 F.3d 62, 67 (1st Cir. 2005) (citation omitted) (emphasis added)). Further, "**arbitration is a matter of consent, not coercion**." Ouadani v. TF Final Mile LLC, 876 F.3d 31, 36 (1st Cir. 2017) (quotation omitted) (emphasis added). As stated above, regardless of the arbitration administrator, Fennix and Prime agreed to arbitration in Panama **or** in Puerto Rico. They **did not** agree to arbitration in Florida. Because arbitration is a matter of contract and of consent, the Court cannot grant Prime the requested relief.

Lastly, Prime did not allege or prove that it met the "heavy burden" required to set aside a choice of forum clause for inconvenience given that the mutually chosen administrator and forum in Panama remain available and the only connection with Boca Raton, Florida is the location of Prime's unilaterally chosen arbitration admistrator. *See* In Re Mercurio, 402 F.3d at 66. (finding that the burden of proof to set aside a forum selection clause for inconvenience requires more "than simply showing that another location would be more convenient").

## IV. CONCLUSION

"Whether enforcing an agreement to arbitrate or construing an arbitration clause, courts and arbitrators must give effect to the contractual rights and expectations of the parties." Stolt-Nielsen v. Animal Feeds International Corp., 559 U.S. 662, 682 (2010) Regardless of whether arbitration administered by JAMS is

"equivalent" to arbitration administered by CeCap, Fennix did not agree to arbitration in Florida. The federal policy favoring arbitration is best served by rejecting Prime's request to rewrite the MOU's arbitration agreement.

For the reasons set forth below, the Court **DENIES** the requested declaratory judgment and **DISMISSES** the *Complaint* **with prejudice**. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 15th day of June 2020.

S/ RAÚL M. ARIAS-MARXUACH
United States District Judge